553 P.2d 1281
David A. GONZALES, Plaintiff-Appellee,
v.
GENERAL MOTORS CORPORATION and Quality Chevrolet Co., Inc., Defendants-Appellants.
No. 2300.

Court of Appeals of New Mexico.
July 6, 1976.

**476**

J. M. Scarborough, Espanola, for plaintiff-appellee.

Civerolo, Hansen & Wolf, Albuquerque, for defendant-appellant Quality Chevrolet Co.

R. D. Mann, Atwood, Malone, Mann & Cooter, Roswell, for defendant-appellant General Motors Corp.

## OPINION

WOOD, Chief Judge.

Plaintiff sued for injuries suffered in a one-car accident allegedly caused by a defect in the car. The verdict was for plaintiff. Defendants appeal, contending: (1) incompetent evidence as to causation, (2) prejudicial argument to the jury, and (3) excessive damage award.

*Evidence as to Causation*

The accident happened on November 24, 1971. The pace of this case through the courts has been leisurely.[1]

The accident occurred on U.S. Highway 54 at a railroad overpass outside of Tucumcari. The highway curves to the left as one approaches the overpass from the north. The overpass has a concrete embankment. The embankment runs at a slope of approximately 45 degrees. There are two sets of railroad tracks on the overpass. The highway is 19½ feet below the tracks.

Plaintiff left the pavement as he entered the left hand curve. There were no tire marks at this point. There were tire marks on the dirt and ground shoulder to the west, or right side, of the pavement. The tracks travel in an arc to the left. The distance of the longest track (right wheels) measured along the edge of the pavement was 33 feet. There is a right wheel tire mark on the pavement extending from reentry of the car onto the pavement to a point 4 feet from the edge of the pavement. Measured along the edge of the pavement, the distance is 27 feet. Approximately 190 feet to the south and diagonally across the highway there is a 10-foot tire mark leading up to where the car struck and broke the curb.

Plaintiff's car then went up the embankment, on the east side of the highway, with its left wheels in the dirt to the east of the concrete embankment. The car passed over the first set of railroad tracks, hit on the second set of tracks and eventually landed on the highway pavement below.

1. The complaint was filed November 21, 1972. General Motors filed its answer January 5, 1973. Quality Chevrolet filed its answer February 28, 1973. Trial began June 2, 1975. The verdict was received June 13, 1975. After disposition of post-verdict motions, judgment was entered September 4, 1975. Notice of appeal was filed October 1, 1975. The appellate record was filed with this Court on March 1, 1976. The brief-in-chief was filed April 13, 1976. The answer brief was filed May 26, 1976. The reply brief was filed June 28, 1976.

Plaintiff's contention was that a defect in his automobile was the proximate cause of the accident. His theory was that by reason of a defect the left motor mount severed, that the engine lifted far enough to dislodge the power brake hose and to bind the accelerator linkage.

There is evidence that the left motor mount separated as the result of progressive wear and tear. Defendants' contention is that there is an absence of competent expert testimony that the severed left motor mount caused the accident.

■ The evidence is that there were pieces of metal at the top and bottom of the motor mount. These pieces are called a double roll stop. Plaintiff's witness, Oden d'Hal, testified that if the motor mount is severed, the top roll stop is dragged down by the weight of the engine, that the bottom roll stop is "clear" and the engine lifts with no interference at all. This testimony was on the basis of personal observation. Defendants assert that they "produced demonstrative evidence which rendered Mr. Oden d'Hal's testimony incompetent". Defendants did introduce evidence to the effect that the bottom roll stop would prevent the engine from lifting. This evidence, however, is contradicted by Oden d'Hal's personal observation. Defendants' evidence did not render Oden d'Hal's testimony incompetent; rather it raised a conflict in the evidence to be resolved by the jury. Montoya v. General Motors Corporation, 88 N.M. 583, 544 P.2d 723 (Ct.App.1975).

■ The witnesses agreed that even with a broken motor mount, the engine would not lift unless plaintiff's car was accelerating. Plaintiff testified that as he entered the curve he was not accelerating. Expert witnesses called by plaintiff testified to the contrary. Defendants contend that plaintiff is bound by his own testimony and that the contrary testimony of his expert witnesses was improper. A party is bound by his own evidence, but where the evidence is inconsistent or contradictory, it is the function of the jury to resolve the conflict and not the function of this Court to resolve the conflict as a matter of law. Wallach v. Paddock, 49 N.M. 317, 163 P.2d 632 (1945); Westbrook v. Lea General Hospital, 85 N.M. 191, 510 P.2d 515 (Ct. App.1973); Gurule v. Albuquerque-Bernalillo Co. Economic Op. Bd., 84 N.M. 196, 500 P.2d 1319 (Ct.App.1972)

■ Oden d'Hal testified that plaintiff's car was accelerating. This witness had not visited the scene and had not talked to the plaintiff. The testimony was based on the witness's experience with tire marks and his examination of two diagrams prepared by the State Police officer who investigated the accident. Defendants contend that Oden d'Hal's testimony lacks a factual basis and, therefore, incompetent and impermissibly speculative. We disagree. Oden d'Hall explained that if plaintiff applied the brakes once he entered the dirt shoulder the car would spin out, and the marks on the diagram did not show a spin out. He explained that if plaintiff drove onto the shoulder with no power there would have been no marks, then gave his opinion that the marks on the shoulder were acceleration marks and that these marks were consistent with the 27-foot mark on reentry onto the pavement. He explained why the 27-foot mark was consistent with acceleration. Oden d'Hall gave a satisfactory explanation as to how he arrived at his opinion. The trial court did not err in refusing to strike his testimony concerning acceleration. Dahl v. Turner, 80 N.M. 564, 458 P.2d 816, 39 A. LR.3d 207 (Ct.App.1969).

Another expert testifying for plaintiff was Mr. Balfour. Defendants assert that Balfour's opinion that the engine lifted was based upon Oden d'Hal's inference that the car was accelerating. Defendants assert this is an impermissible piling of inference on inference. See Adamson v. Highland Corporation, 80 N.M. 4, 450 P.2d 442 (Ct.App.1969). We do not find, in a reading of Balfour's testimony, that Balfour relied on Oden d'Hal's opinion that the car was accelerating. Defendants do

not cite such testimony. Balfour testified that the car was accelerating on the basis of certain assumptions, one of which was that there was a loss of the power brakes when plaintiff went off onto the shoulder. Balfour explained his reasons for the assumption he made. There was no piling of inference on inference concerning acceleration.

■ Balfour's testimony is to the effect that the engine lifted and that the car was accelerating as it reentered the pavement from the shoulder. Defendants assert this testimony is incompetent and inherently improbable. Defendants refer us to testimony of their own witness that a test was run on a similar car. In this test the car was accelerated from a standing start. The tires would spin in the gravel but left no mark on reentry onto the pavement. Defendants also rely on plaintiff's testimony that he was not accelerating and was driving at a steady speed as he entered the curve and went onto the shoulder. Balfour assumed that the car was not accelerating at that point. Balfour testified that when the engine raised, the vacuum hose was pulled off very early from the power brake system. According to Balfour, this resulted in the loss of braking power, in the right wheel gaining high rotational speed while on the gravel and leaving the 27-foot acceleration mark upon reentry onto the pavement. Balfour's opinion was that the car partially slowed down going around the curve on the dirt and then had accelerated back up to the speed of 35 m.p.h. when it hit the curb on the other side of the highway approximately 190 feet further along the road. Defendants have not demonstrated that Balfour's testimony was "inherently improbable" as that term is defined in *State v. Boyd,* 84 N.M. 290, 502 P.2d 315 (Ct.App. 1972), cert denied, 411 U.S. 937, 93 S.Ct. 1916, 36 L.Ed.2d 398 (1973), reh. denied, 412 U.S. 924, 93 S.Ct. 2739, 37 L.Ed.2d 151 (1973). Nor have they demonstrated that Balfour's testimony was incompetent.

Defendants assert that it is uncontradicted that if the engine lifted, the engine would bind the acceleration linkage in the position it was in when the engine lifted. This testimony is consistent with Balfour's testimony as to speed and does not prove that the marks on the highway could not be acceleration marks.

■ Defendants contend that if the engine had lifted there would have been contact marks on the fan shroud and transmission housing. Because no such marks were found on plaintiff's car, they assert it is undisputed that the engine did not lift. It was for the jury to determine the credibility of this evidence and the weight to be given to it. *Wood v. Citizens Standard Life Insurance Company,* 82 N.M. 271, 480 P.2d 161 (1971). Balfour testified that three forces were sufficient to raise the engine from a severed motor mount. They are: (1) the curvature of the roadway while turning in a curve, (2) engine torque due to operating conditions, and (3) loss of weight of engine due to bumps and changes in the road surface. Balfour testified that there were two other possibilities other than that the engine lifted, but these two possibilities did not fit with the observed facts.

Defendants contend that even if the accident occurred as plaintiff's witnesses said it did (raised engine, loss of braking power, acceleration upon reentering onto the pavement), there was no evidence that something went wrong with the steering or that plaintiff lost control of the car. The answer is that loss of control was a permissible inference and such was not an improper inference on inference because of plaintiff's testimony. Plaintiff testified that as he approached the curve he heard a small thump just back of the left front wheel and the car sort of swiveled. According to the point that plaintiff marked on an exhibit, the thump occurred just before the car left the pavement and just before plaintiff "guessed" that he lost control of the car.

Throughout this point defendants, contrary to appellate procedure, have argued the evidence in the light most favorable to themselves. There is no merit to the contention that there was no competent evidence as to causation.

## Prejudicial Argument to The Jury

Defendants assert that improper and highly inflammatory statements by plaintiff's counsel during closing arguments to the jury prejudiced their case. Defendants' first objection to counsel's argument was by a motion for a new trial subsequent to the verdict. The objection was not timely. See *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App.1974). Except for argument directed to damages, we cannot say that the allegedly improper argument probably contributed to an erroneous verdict. *Apodaca v. United States Fidelity and Guaranty Co.*, 78 N.M. 501, 433 P.2d 86 (1967). The argument concerning damages is considered in the next point. *Jackson v. Southwestern Public Service Company*, 66 N.M. 458, 349 P.2d 1029 (1960).

## Excessive Damage Award

Plaintiff was burned in the accident. The burns were to the left arm, left wrist and forearm, left hand, on the back in the area of the right shoulder extending below the scapula, on the upper part of his throat and under the chin, across his forehead, both cheeks and his right eyelid. The burns were shallow, although some of them were second and third degree burns. Scarring has resulted from the burns.

Plaintiff was hospitalized in Tucumcari for two days. Laboratory tests there showed all but two tests gave results in the normal range.

Plaintiff was then taken to a burn treatment center in Albuquerque where he was hospitalized for an additional 52 days. After discharge from the Albuquerque hospital, he saw his doctor twice a week for one month and once a week for an additional month.

Plaintiff returned to work five months after the accident. He is on the same job doing the same type of work as he performed prior to the accident. Plaintiff's wife testified that he performed heavy work. His salary is greater than before the accident. There is no evidence of absenteeism since his return to work.

The most serious burns were on plaintiff's back and left arm. He has an itching sensation in these areas after exposure to sun or cold weather. Since the accident he also has had a "popping" in his left elbow, but no therapy has been prescribed. Plaintiff underwent one skin grafting operation on the left arm and back. There is evidence that plaintiff's back bothers him at the site of the graft on the back, but no evidence as to the extent of this "bothering".

Plaintiff's wife testified that since the accident he is more irritable, that the children get on his nerves. She testified that after the accident plaintiff was depressed and stated that he wished he had died in the accident. She testified that plaintiff moans and groans in his sleep on occasion. A clinical psychologist who does not know plaintiff and who has never seen him, testified that depression could evidence itself in the manner described by the wife. Medical records of the Albuquerque hospitalization contain references to depression. These references lessen during the course of the hospitalization.

There is medical evidence that plaintiff suffered amnesia after the accident. This cleared up after being in the Albuquerque hospital three to four weeks. Plaintiff continues to suffer amnesia in connection with the events of the accident. The testimony of plaintiff's psychiatrist is that the amnesia was in no way disabling.

Plaintiff's family physician testified that plaintiff was in good health, that the scarring was permanent, that the scars would be sensitive to pressure, rubbing, heat and sunlight. The family physician had not noted any remarkable change in his emo-

tional or mental state subsequent to the accident.

The medical expenses and lost wages amount to $8,271.79. There is no proof of diminished earning capacity or future medical expense.

There is evidence that plaintiff was in severe pain and in shock when admitted to the hospital in Tucumcari. There is evidence of the drugs administered during this two-day period. There is no oral testimony as to plaintiff's condition during his hospitalization in Albuquerque. The evidence as to plaintiff's condition during the Albuquerque hospitalization comes from the medical records. These records show that medication, including drugs, lessened during the course of the hospitalization. There is no evidence of medication after a visit to the Albuquerque hospital as an outpatient on March 16, 1972.

To summarize: 1. There is evidence of burns which have healed with permanent scarring. 2. There is evidence that these scars produce discomfort evidenced by itching because of sensitivity to light, heat and pressure. 3. There is evidence of depression following the accident which cleared up during the hospitalization, but which has occasionally manifested itself since discharge from the hospital. 4. There is evidence of amnesia which is not disabling. 5. There is evidence of severe pain and suffering immediately after the accident which lessened during the hospitalization. After discharge from the hospital the evidence of pain and suffering is practically non-existent. 6. There is no evidence of diminished earning capacity or future medical expense.

The jury verdict, which the trial court upheld by denying the post trial motion for a remittitur, was $275,441.00. Deducting the special damages, there is an award of approximately $267,000.00 for the damages summarized above. Defendants contend this is excessive. We agree.

The question of excessiveness is determined by (1) whether the evidence,

viewed in the light most favorable to plaintiff, substantially supports the award, and (2) whether there is an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact finder. *Hughes v. Walker,* 78 N.M. 63, 428 P.2d 37 (1967). If either of the above tests are met, the award is excessive. *Clinard v. Southern Pacific Company,* 82 N.M. 55, 475 P.2d 321 (1970); *Vivian v. Atchison, Topeka and Santa Fe Railway Co.,* 69 N. M. 6, 363 P.2d 620 (1961).

In our opinion, the evidence summarized above does not support an award of approximately $267,000.00 for damages apart from medical expenses and lost wages. We base this result on the length of the time involved in the pain, suffering and depression, the evidence as to the amount of scarring and the itching from the scarring, and the lack of disability from the amnesia.

In our opinion, the record also shows prejudice and sympathy. Specific items are: 1. The verdict exceeded by at least $17,000.00 the amount of damages prayed for in the complaint. Thus, the verdict exceeded plaintiff's own estimate of his damage. See *Smith v. Tang,* 100 Ariz. 196, 412 P.2d 697 (1966). 2. During closing argument to the jury, plaintiff's counsel contended that plaintiff was handicapped for life in his "mind" and that he suffered "brain damage". There is no evidence to support these statements. See *Jackson v. Southwestern Public Service Company,* supra.

The verdict is excessive by $200,000.00. Oral argument is unnecessary. If within ten days from the date of this decision plaintiff will file a remittitur with the Clerk of this Court in the sum of $200,000.00 from the verdict of $275,441.00, the judgment will be affirmed for $75,441.-00 as of the date of entry of judgment in the trial court. If the remittitur is not filed within the 10-day period, the judgment will be reversed and remanded for a

new trial limited to the issue of damages. *Vivian v. Atchison, Topeka and Santa Fe Railway Co.*, supra; *Jackson v. Southwestern Public Service Company*, supra.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.