679 P.2d 833

**Sherry A. REGENOLD,
Plaintiff-Appellee,**

v.

**George C. RUTHERFORD and Ken E.
Rutherford, Defendants-Appellants.**

**No. 7369.**

Court of Appeals of New Mexico.

March 1, 1984.

Certiorari Denied April 2, 1984.

Mark J. Klecan, Klecan & Childress, Albuquerque, for defendants-appellants.

Mark C. Dow, Annette N. DeBois, Paskind, Lynch & Dow, P.A., Albuquerque, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Plaintiff was injured in an automobile accident. She sued defendants for both compensatory and punitive damages. Defendant, Ken E. Rutherford, the son, was driving a car with the permission of George C. Rutherford, the father, within the family purpose doctrine. *See Peters v. LeDoux*, 83 N.M. 307, 491 P.2d 524 (1971). Prior to trial, the claim of punitive damages against George C. Rutherford was disposed of by a partial summary judgment. The punitive damage claim against Ken remained in the case. The trial court dismissed this punitive damage claim at the close of the evidence. The jury awarded plaintiff compensatory damages of $47,500.00. Defendants appeal. We discuss: (1) handling of the punitive damage claim; (2) the propriety of admitting certain compensatory damage testimony; and (3) asserted judicial misconduct.

### Handling of the Punitive Damage Claim

Having admitted liability for compensatory damages, defendants assert that the admission of testimony concerning the "aggravated circumstances" of the accident was error because no punitive damage claim was submitted to the jury. Defendants argue: "This evidence of the aggravated circumstances of the accident was introduced solely to arouse the jury and lead to an excessive verdict on the compensatory damage claim which could be collected from the defendant, George Rutherford."

Defendants do not assert, as a separate point relied on in the appeal, *see* NMSA 1978, Civ.App.R. 9(h) and (k) (Cum.Supp. 1983), that the compensatory damage award was excessive. However, a suggestion of excessiveness is presented as a synthesis of all defendants' arguments. Accordingly, we answer the suggestion of excessiveness in our discussion of the compensatory damage testimony.

The argument as to the handling of the punitive damage claim is based on a distortion of what occurred in the trial court.

Defendants admitted liability for compensatory damages at a conference between the trial court and counsel immediately prior to the start of the jury trial. This resulted in a discussion of the punitive damage claim against Ken. In this discussion, plaintiff's counsel recognized that he might have difficulty collecting any punitive damages that might be awarded. Plaintiff's counsel also recognized that, at the conclusion of the evidence, the trial court might consider the evidence was insufficient for punitive damages to be submitted to the jury. This is the basis for the defendants' claim that evidence of aggravating circumstances was introduced solely to arouse the jury.

The distortion is in the defendants' disregard of what happened thereafter. Plaintiff reaffirmed that punitive damages were sought from Ken on the basis of willful, malicious conduct. The jury was informed, without objection from defendants, that the defendants had admitted liability for the negligent driving of Ken, that the case would proceed on the issue of damages sustained by the plaintiff, "and the complaint for punitive damages for the alleged willful and malicious conduct of Ken Rutherford."

Plaintiff introduced evidence of the aggravated circumstances of the accident. This evidence went to Ken's drinking, his speeding and his turning off the lights of his car before entering the intersection where the accident occurred. This evidence was relevant to plaintiff's claim that Ken's conduct was willful and malicious. At the close of the evidence, the trial court ruled that this evidence was insufficient for submission of the punitive damage claim to the jury. The transcript does not show that the testimony was introduced "solely to arouse the jury"; rather, it was submitted in support of a claim that was an issue in the case at the time the testimony was presented.

Defendants argue that all of the punitive damage testimony was included in depositions that were before the trial court at the time of the conference. On this basis, defendants infer that plaintiff knew that the punitive damage claim would never get to the jury. This is presented in support of the argument that testimony as to the circumstances of the accident was presented solely to arouse the jury.

In the appeal, defendants sought unsuccessfully, in both the trial court and in this Court, to have the depositions included as a part of the appellate record. The appellate record contains all portions of the depositions that were used at the trial. Defendants never sought dismissal of the punitive damage claim against Ken at the conference. Defendants never informed the trial court that the depositions included all the punitive damage testimony and that the deposition testimony was insufficient to raise a jury issue. Defendants are attempting to raise an issue never raised in the trial court; that issue is whether the punitive damage claim should have been dismissed prior to trial. They are attempting to support that issue on the basis of material never brought to the trial court's attention. They may not do so. NMSA 1978, Civ.App.R. 11.

There was no error in the admission of evidence on the issue of punitive damages. The question is the appropriate procedure when a claim that was tried is dismissed by the trial court before the case was submitted to the jury. In this case, defendants' counsel asked if the trial court was going to advise the jury that the punitive damages claim had been dismissed. The trial court said that it would. The jury was informed: "I want to advise the jury that the Court has dismissed the claim for punitive damages against Ken Rutherford. So this case will go to the jury only on the claim of general or compensatory damages for plaintiff's injuries."

Defendants may have been entitled to have the jury instructed that the evidence going to punitive damages was not to be considered on the issue of compensatory damages. This need not be decided because defendants did not ask for a limiting instruction. *McCauley v. Ray*, 80 N.M. 171, 453 P.2d 192 (1968); *see* NMSA 1978, Civ.P.R. 51(I) (Cum.Supp.1983) on failure to instruct. Defendants assert that such an instruction would have been ineffective "since the jury has already heard the prejudicial testimony." This argument disregards the approval of limiting instructions in NMSA 1978, Evid.R. 105 (Repl.Pamp. 1983). *See State v. Ortiz*, 88 N.M. 370, 540 P.2d 850 (Ct.App.1975).

The trial court did not err in its handling of the punitive damage claim.

**Compensatory Damage Testimony**

**(a) Suggestion of excessiveness.**

▮ The accident occurred in June 1978. The trial was in May 1983. Plaintiff suffered a compression fracture of the L3 vertebrae; the broken portion of the vertebrae had not healed (a non-union) by the time of trial and will not heal in the future. The disc space at L2–L3 had narrowed and there was a bulging annulus. Plaintiff's back condition will degenerate in the future. There was evidence that plaintiff had had continuing low back pain since the injury; that the back pain was due to chronic back strain caused by the accident. Plaintiff is not a malingerer. She was characterized as not exaggerating and maybe understating. She had a life expect-

ancy at the time of the accident of over 60 years.

An award of $47,500.00 for a broken vertebrae that will not heal and will degenerate in the future, for pain that has continued for over four years and will continue and worsen as future degeneration occurs is not excessive. See the test for excessiveness stated in *Gonzales v. General Motors Corporation*, 89 N.M. 474, 553 P.2d 1281 (Ct.App.1976).

Defendants' suggestion of excessiveness is not based on the injury or the pain. Defendants assert that the compensatory damage award is excessive because testimony was improperly admitted as to future medical care and loss of earning capacity. This contention does not involve excessiveness but the propriety of admitting testimony.

**(b) Future surgery.**

■ There was testimony as to how frequently plaintiff should be seen by a physician so that the progress of the degeneration could be checked, and the cost thereof. Defendants' objection to all future medical expense, including these future trips to the doctor, is discussed in (c). Here, we consider defendants' complaint about testimony that plaintiff may need a spinal fusion in the future and that the cost in connection with the fusion would be approximately $10,000.00. Defendants assert the cost figure, *see Baros v. Kazmierczwk*, 68 N.M. 421, 362 P.2d 798 (1961), should not have been admitted because of the absence of evidence that as a medical probability the spinal fusion would be required. *Michael v. West*, 76 N.M. 118, 121, 412 P.2d 549 (1966), held that testimony that " 'plaintiff may require an operation' is insufficient to support the judgment for the cost [of the operation]." *Michael v. West* indicates that cost of future surgery must be based on evidence "that such a future operation will be required as a medical probability." *Id.* at 121, 412 P.2d 549. *See* Annot., 75 A.L.R.3d 9 at 17 (1977). Defendants assert such evidence is lacking. We disagree.

The worker's compensation statute involved in *Gammon v. Ebasco Corpora-*

*tion*, 74 N.M. 789, 399 P.2d 279 (1965), required that the causal connection between the accident and the injury be established as a medical probability. NMSA 1978, § 52–1–28(B). *Gammon* states: "[T]he medical expert need not state his opinion in positive, dogmatic language or in the exact language of the statute. But he must testify in language the sense of which reasonably connotes precisely what the statute categorically requires." 74 N.M. at 794.

*Saide v. Stanton*, 135 Ariz. 76, 659 P.2d 35, 37 (1983), states: "The use or refusal of an expert to use a 'magic word' or phrase such as 'probability' is not determinative. The trier of fact is allowed to determine probability or lack thereof if the evidence, taken as a whole, is sufficient to warrant such a conclusion." *See also Nunez v. Wilson*, 211 Kan. 443, 507 P.2d 329 (1973).

■ Defendants assert that the physician did use a "magic word" in that he refused to state that a future spinal fusion was reasonably probable. This contention overlooks how the physician defined his terms. The physician stated he could not use the word " 'possible' " meaning that it "just might happen"; he stated he could not use " 'probable' " "because that means it will happen." The requirement of evidence to a medical probability uses "probable" in the sense of "that can reasonably and fairly convincingly be accepted as true * * * without being undeniably so * * *. Probable applies to that which is so supported by evidence that is adequate although not conclusive or by reason that it is worthy of belief or acceptance * * *." *See* "probable" in Webster's Third New International Dictionary (1966).

Approved civil damage instructions use "reasonably certain" rather than "reasonably probable", *see* NMSA 1978, UJI Civ. 18.3, 18.4, 18.5, 18.7, 18.9, 18.10. The use of "reasonably certain" in these instructions to state the legal test of "reasonably probable" indicates no distinction is to be made in these terms. *See Nunez v. Wilson.*

■ The fact that the physician declined to use the word "probable", because of the physician's meaning of probable, does not show that a future spinal fusion was not a reasonable· probability. We look to the physician's testimony "as a whole", *Saide v. Stanton*, to determine whether the testimony "reasonably connotes", *Gammon v. Ebasco Corporation*, a probability.

Plaintiff was sixteen years old when the accident occurred, and twenty years old at the time of trial. The physician testified:

But what does concern me is not so much the unhealed piece of bone, but evidence that this damage occurred at this disc and is not healing. I can't say, though, that it is narrowing rapidly. I would expect in years, though, that that pad, having been damaged, will narrow and become more of a problem for Sherry.

After explaining his concern with the disc and the bulging annulus, the physician continued:

The obvious solution would be a matter of moving the vertebra back up to the normal height, making this space equal to what it's supposed to be, getting it backward so these nerves aren't all distorted, and placing bone graft in here (indicating). And that's called a spine fusion. She would need a fusion between here to stop that pain in that one particular segment.

\*   \*   \*   \*   \*   \*

\* \* \* And if you start out at the age of 19 or 20 with this, it's *fairly likely* that there will be significant problems when the patient or the person is 40 years of age. [Emphasis added.]

\*   \*   \*   \*   \*   \*

\* \* \* [W]e think that once the disc is damaged, it progresses toward deterioration much more so than a normal disc would. Say, in ten years. We know that a normal disc will be ten years older and somewhat worn. If you take a damaged disc and add ten years, we know it's going to be a lot worse off than this one would be, the normal one.

\*   \*   \*   \*   \*   \*

\* \* \* The problem is that this is a young person who has this injury that has not manifested itself fully yet \* \* \*.

\*       \*       \*       \*       \*       \*

\* \* \* You know, what's interesting in this particular fracture, from a teaching point of view, that as time has gone along, the fracture, instead of looking better, has looked worse. \* \* \*

\*       \*       \*       \*       \*       \*

\* \* \* I can't say for sure that Sherry is going to end up with this operation. It is somewhere in the area of likely, or approaching 50–50.

\* \* \* I don't know if it really will come to pass, but I think it's going to be close.

*Saide v. Stanton* states:

The fact that the dentist refused to foretell the future and would not state positively that Stanton would require these procedures goes to the weight of his testimony and does not deprive the jury of the right to consider it. [Citations omitted.] Furthermore, it is well within the province of the jury to reach their own conclusion on the issue as long as the evidence as a whole will support a finding that the future treatments are reasonably probable. [Citation omitted.]

*Nunez v. Wilson* points out that the words "liable", "likely" and "probable" have been accepted as words connoting reasonable probability. The physician said the future fusion was "fairly likely" and explained why. *See* NMSA 1978, Evid.R. 705 (Repl.Pamp.1983). His testimony on the future spinal fusion was properly admitted; his testimony would support a finding that this future treatment was medically probable; it was for the jury to reach its own conclusion on this issue. *Saide v. Stanton.*

**(c) Intervening accident.**

■ Defendants contend that all testimony as to the cost of future medical expenses was improperly admitted because the physician "was not aware of an intervening accident in which the plaintiff was involved." Defendants rely on *Niederstadt v. Ancho Rico Consolidated Mines,*

88 N.M. 48, 536 P.2d 1104 (Ct.App.1975). *Niederstadt* involved a suit for a second injury; there was evidence of a pre-existing low back injury and evidence that after the second injury there was no additional disability or injury. Dr. Palafox testified as to causal connection as a medical probability but had no knowledge of the pre-existing low back condition. *Niederstadt* held that in these circumstances Dr. Palafox's testimony was insufficient to show causal connection to a medical probability.

*Niederstadt* is not applicable for two reasons. First, the physician testified as to the causal connection between the accident and plaintiff's low back condition. There was no contrary medical testimony and nothing suggesting a pre-existing low back condition. *See Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979). Second, the testimony in this case does not support defendants' argument concerning injury in an intervening accident. *See Martinez v. Fluor Utah, Inc.*, 90 N.M. 782, 568 P.2d 618 (Ct. App.1977).

On cross-examination the physician testified that he was unaware of any trauma intervening between the accident and the time of trial. Asked if plaintiff's injury was the type that was susceptible to aggravation by subsequent trauma, the physician answered that it would have to be trauma of "significant magnitude * * *. If there is no record of major trauma, I would say that it is all one continuous process." Asked if he would want to reconsider his opinion if there was evidence of "some other trauma," the physician stated: "Yes, I think it would be significant if it was a significant injury."

The cross-examination referred to above avoided identifying or asking about injury to a particular area of the body. The physician's testimony was about plaintiff's low back condition. Such evidence as there was of intervening trauma was elicited from plaintiff when defendants called her as a defense witness.

Plaintiff testified that she was involved in an automobile accident in 1980 when a car drove from a parking lot into her lane of travel and she ran into it. Plaintiff testified that she went to see a doctor the day after the accident but made no claim for any injury in the accident, and was not injured in this accident. Plaintiff was not asked if she had any new complaints about her low back after the 1980 accident; she was not asked if she had complaints of any kind after the 1980 accident.

Defendants' intervening accident argument is frivolous in that there is no factual basis for the argument.

**(d) Earning capacity.**

■ An economist testified as to plaintiff's potential loss of earning capacity. *See Strickland v. Roosevelt County Rural Electric Cooperative*, 99 N.M. 335, 657 P.2d 1184 (Ct.App.1982). Loss of earning capacity was included in the instructions as a damage item to be considered by . the jury. *See UJI Civ. 18.3*.

Defendants contend the instruction should not have been given because it was based on the erroneous admission of the economist's testimony. They claim the economist's testimony was improperly admitted because it was "based on a summarization of the medical testimony ... and thus suffered from the same defect as did [the physician's] testimony." This argument fails because the physician's testimony was properly admitted.

**Asserted Judicial Misconduct**

■ Defendants complain of "misconduct" of the trial court "during the course of the trial which ultimately affected the outcome of the trial." This argument goes to rulings and comments of the trial court during the direct examination of plaintiff as a defense witness. "Throughout counsel's questioning, Judge Traub repeatedly interrupted counsel, made objections to the questions, and finally admonished the plaintiff's attorney to speak up." Defendants assert that the trial court's conduct "illustrated" a bias in favor of the plaintiff and "influenced the outcome of the jury trial, as reflected by the excessive verdict * * *" We have previously held that the evidence of injury and pain, without considering oth-

er damage items, supports the damage award, and the award is not excessive. The remainder of the defendants' argument is exaggeration, not supported by the record.

The trial court did make some evidentiary rulings before plaintiff's counsel objected but the rulings must be considered in context. Defendants' counsel attempted to read from the police report of the 1980 accident; plaintiff's counsel objected and the objection was sustained. After plaintiff testified that she had never seen what purported to be a police report, defendants' counsel asked plaintiff if the exhibit appeared to be a police report. The trial court remarked "[y]ou can't do that" before plaintiff's objection was sustained. Defendants' counsel then tendered the police report as evidence in violation of NMSA 1978, Section 66–7–213. The trial court refused the tender. Defendants' counsel asked plaintiff if she made a claim against anybody for injuries or property damage. The trial court ruled that it was a compound question; "[a]sk it singly." The trial court also ruled that property damage would be irrelevant. Disregarding the trial court's ruling, defendants' counsel asked about property damage. At this point, the trial court remarked that it was going to quit making objections for plaintiff's counsel.

The foregoing shows neither undue interference nor conduct by the trial court which prevented a proper presentation of defendants' case. Rather, it shows proper intervention because of the attempts of defendants' counsel to question plaintiff on matters not properly involved in the case. *See In re Will of Callaway,* 84 N.M. 125, 500 P.2d 410 (1972); NMSA 1978, Evid.R. 611(a) (Repl.Pamp.1983).

Instead of complaining about the trial court's conduct, it would be appropriate for defendants' counsel to apologize to the trial court for counsel's conduct. *See Grammer v. Kohlhaas Tank & Equipment Co.,* 93 N.M. 685, 604 P.2d 823 (Ct.App.1979).

The judgment is affirmed. Defendants shall bear the appellate costs.

IT IS SO ORDERED.

HENDLEY and ALARID, JJ., concur.