1998-NMCA-085

960 P.2d 834

**James E. SANDOVAL, Plaintiff–Appellee,**

v.

**CHRYSLER CORPORATION,
a Delaware Corporation,
Defendant–Appellant.**

**No. 18198.**

Court of Appeals of New Mexico.

May 20, 1998.

Kevin Martinez, Walter K. Martinez Law Office, Joe M. Romero, Jr., Romero & Associates, P.A., Albuquerque, for Plaintiff-Appellee.

Walter J. Melendres, Sarah M. Singleton, Andrew S. Montgomery, Montgomery & Andrews, P.A., Santa Fe, Burgain G. Hayes, Leslie Benitez, Clark, Thomas & Winters, P.A., Austin, TX, for Defendant-Appellant.

## OPINION

BOSSON, Judge.

{1} We are called upon to examine the duty of the trial judge who finds that a jury's award of compensatory damages shocks the conscience of the court, but who nevertheless denies a motion for remittitur or, in the alternative, a new trial. We hold in this case that the court abused its discretion in failing to act upon its findings regarding an excessive verdict, and we reverse and remand for the court to do so. We also address the difficulty facing trial judges in evaluating the amount of damages awarded by a jury for pain and suffering, and we reconfirm our conviction that trial judges can properly perform their vital review function without the artificial aid of a fixed mathematical formula for pain and suffering.

## BACKGROUND

{2} A catastrophic automobile accident occurred during the early morning hours of October 15, 1993, near Las Vegas, New Mexico. The driver, James Sandoval (Plaintiff) and his three passengers, Brian Archuleta, Angela Archuleta, and Gail Martinez, were traveling in a 1984 two-door Plymouth Laser, manufactured by Chrysler Corporation (Chrysler). As they rounded a curve in the road, Plaintiff swerved to avoid an oncoming vehicle that was traveling near the center line. His car skidded out of control, struck several objects, and became airborne before coming to rest on its top. There was evidence that Plaintiff was intoxicated and speeding at the time of the accident.

{3} As Plaintiff and his front seat passenger, Brian, worked their way out of the vehicle, it caught fire. Angela and Gail, the passengers in the back, were unable to escape from the burning car, and they died at the accident. By all accounts, the scene of the accident was horrific with the two passengers essentially being burned alive.

{4} By contrast, Plaintiff appears to have been relatively fortunate. Although he suffered second and third degree burns on his arms and face, they were not severe enough to require hospitalization and were treated with pain medication and creams. Apparently, Plaintiff did not suffer any perceptible scarring or disfigurement from the burns, although the skin on his face now burns more easily in the sun. Plaintiff also suffered emotional and psychological injury from the accident. He was unable to return to work for five weeks after the accident. He received psychological counseling, and he continues to participate in weekly group counseling and monthly individual counseling. Plaintiff has been diagnosed with post-traumatic stress disorder as a result of the accident.

{5} Plaintiff, Brian, and Angela's estate brought this lawsuit against Chrysler, alleging that the car caught fire due to a defective design in the Plymouth Laser. The jury returned a verdict in favor of all three plaintiffs and awarded Plaintiff $1,000,000 in compensatory damages. The jury also found that Plaintiff was 25% responsible for the accident, that Brian was 2% at fault, and that the driver of the unknown vehicle was 3% at fault. Therefore, Plaintiff's verdict against

Chrysler was reduced by 30% under New Mexico's comparative fault principles to a judgment for $700,000. The jury also awarded Brian $3,500,000 and Angela's estate $7,000,000 in damages against Chrysler. Those other plaintiffs settled with Chrysler after trial, and they are not parties to this appeal.

{6} Chrysler subsequently moved for a remittitur or a new trial with respect to Plaintiff, contending that the jury verdict of $1,000,000 was excessive as a matter of law. Chrysler emphasized evidence that Plaintiff had only incurred approximately $5000 in actual economic damages, which included all past and future medical bills, psychological counseling, and lost income. The rest of the award was apparently based on pain and suffering. Chrysler argued that the jury's $1,000,000 verdict was so grossly out of proportion to Plaintiff's injuries that it shocked the conscience and should be reduced.

{7} The trial judge agreed with Chrysler's characterization of the verdict. The judge acknowledged that the jury verdict shocked the conscience of the court, but the judge nevertheless denied Chrysler's motion, believing that he lacked adequate guidance in the law to determine what a fair verdict would be with regard to pain and suffering and to ascertain how much the verdict should be reduced by way of remittitur. In an attempt to accurately describe the unusual nature of his decision, the trial judge directed that the order denying Chrysler's motion contain a verbatim portion of his oral ruling from the bench. Portions of that order follow:

> I'm going to let Chrysler put in its order that the conscience of the Court is shocked because there was no evidence, at least in my opinion, there was insufficient evidence to justify a million dollars. But the problem that there is, is that there was evidence to justify some kind of compensatory damages, but when we talked [sic] about pain and suffering and emotional distress, the Supreme Court has not put any guidelines on that. There are no caps on damages that can be awarded, so this jury could very possibly have said this guy is having nightmares, he's got Post–Traumat-

ic Stress Syndrome and in our opinion that's worth $975,000.00. And I don't think this Court is in a position to where I can say I can go ahead and substitute my feelings—my verdict for that of the jury.

> . . . .

> I think they should give me some kind of guidelines as to how I should reduce this. They should say, okay for pain and suffering we've got a limit. I don't even know if the Supreme Court can do this. Maybe the legislature is going to have to come along and say we're going to have to put some kind of caps in some kinds of cases. I don't know.

> But to me this is jury [sic] not—Mr. Sandoval did not deserve a million dollars for killing two girls with the limited damages that he suffered. But I think because of the way the system is set up right now with the jury instructions with the pain and suffering. [sic] I think they're pretty much free to do whatever they want to do.

> . . . .

> But in this area where we're talking about less than a million dollars, possibly, for pain and suffering and that type of thing, I'm going to have to go ahead—I'm not going to set it aside. I'm going to let the Appellate Court know that this is a case where this Court's conscience is shocked by that amount of money, and the Appellate Court may disagree and say we're sorry. That's why you didn't decide the case. That's why we had a jury. I don't know, but if they agree, then I think maybe they should come out with some kind of guidelines. Maybe that's a decision they can made [sic] because they can review the evidence just as well as I can or might send it back for a new trial. I don't have the slightest idea.

> I'm going to deny Chrysler's Motion, but I do want—Chrysler may go ahead and put in the Order that the Court's conscience was shocked by the amount of damages that was awarded, to Mr. Sandoval in this case, evidently for pain and suffering because I don't think there was sufficient evidence to justify that amount of damage, actually.

{8} Chrysler appeals from the denial of its motion for a remittitur or a new trial, arguing that the trial court abused its discretion after finding that the verdict was so excessive under the circumstances that it shocked the conscience of the court.

## DISCUSSION

{9} An order granting a remittitur or, in the alternative a new trial, is appropriate when the jury's award of damages " 'is so grossly out of proportion to the injury received as to shock the conscience[.]' " *See Lujan v. Reed*, 78 N.M. 556, 564, 434 P.2d 378, 386 (1967) (quoting *Mathis v. Atchison, Topeka & Santa Fe Ry. Co.*, 61 N.M. 330, 336, 300 P.2d 482, 487 (1956)). New Mexico case law provides two tests for determining whether an award is so excessive that it shocks the conscience: " '(1) whether the evidence, viewed in the light most favorable to plaintiff, substantially supports the award and (2) whether there is an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact finder.' " *Sweitzer v. Sanchez*, 80 N.M. 408, 409, 456 P.2d 882, 883 (Ct.App.1969) (quoting *Chavez v. Atchison, Topeka & Santa Fe Ry. Co.*, 77 N.M. 346, 351, 423 P.2d 34, 37 (1967)); *accord Richardson v. Rutherford*, 109 N.M. 495, 503, 787 P.2d 414, 422 (1990); *Baxter v. Gannaway*, 113 N.M. 45, 48, 822 P.2d 1128, 1131 (Ct.App.1991); *Martinez v. Teague*, 96 N.M. 446, 452, 631 P.2d 1314, 1320 (Ct.App. 1981); *Gonzales v. General Motors Corp.*, 89 N.M. 474, 480, 553 P.2d 1281, 1287 (Ct.App. 1976). The award is excessive if either test is met. *See Gonzales*, 89 N.M. at 480, 553 P.2d at 1287. However, the options available to the trial court may vary depending on which test is met.

{10} For example, if "passion or prejudice existed such as would vitiate the verdict on the question of liability," a new trial would be in order. *Richardson*, 109 N.M. at 503, 787 P.2d at 422. But if the evidence viewed in the light most favorable to the verdict simply "does not support the amount of damages awarded by the jury," and there are no indications of passion or prejudice, the "court in its discretion may order remittitur as an alternative to a new

trial." *Id.* Of course, the trial court still must give the plaintiff the option of choosing between the remittitur or a new trial. *See Chavez–Rey v. Miller*, 99 N.M. 377, 379, 658 P.2d 452, 454 (Ct.App.1982). "Otherwise, a remittitur would invade the province of the jury and violate the constitutional right to trial by jury." *Id.* But if the plaintiff declines to accept the remittitur and opts for a new trial, the new trial may be limited to the issue of damages. *See Gonzales*, 89 N.M. at 480–81, 553 P.2d at 1287–88.

{11} In this case, the trial judge repeatedly stated that the jury's award of damages shocked the conscience of the court. The judge also specifically found that there was insufficient evidence to support the amount of damages awarded by the jury. Ordinarily, such findings would lead to the grant of a remittitur or a new trial. However, the trial judge denied Chrysler's motion, not because the judge was satisfied with the verdict, but because the judge believed he needed more specificity in the law regarding what would be an appropriate amount of damages for pain and suffering. Consequently, the judge chose to ask this Court to formulate specific guidelines and determine whether the jury's verdict should be reduced. We decline to do so for a number of reasons.

{12} We can only review the trial judge's decision for an abuse of discretion. *See Chavez–Rey*, 99 N.M. at 379, 658 P.2d at 454. However, in this instance the judge refused to exercise his discretion, despite the predicate findings and the court's conviction that the award should be reduced. The failure of the trial judge to exercise his discretion is, in itself, reversible error. *See State v. Conn*, 115 N.M. 101, 105, 847 P.2d 746, 750 (Ct.App.1992). Beyond the trial judge's failure to exercise his discretion, his decision is reversible for two additional reasons: 1) the decision asks this Court to assume a role that should be fulfilled by the trial judge in the first instance, and 2) the decision denying Chrysler's motion on the basis of the lack of specific guidelines defining pain and suffering is erroneous as a matter of law.

{13} "[I]t is not the duty of the appellate court to evaluate the value of pain and suffer-

ing." *Baxter*, 113 N.M. at 49, 822 P.2d at 1132. Without a doubt, the valuation of pain and suffering is a difficult, inexact undertaking at best. "No one can measure another's pain and suffering; only the person suffering knows how much he or she is suffering, and even this person cannot accurately say what would be reasonable compensation for it." *Grammer v. Kohlhaas Tank & Equip. Co.*, 93 N.M. 685, 695, 604 P.2d 823, 833 (Ct.App. 1979). Because of this basic truth, our courts have repeatedly recognized that there can be "no standard fixed by law for measuring the value of ... pain and suffering." *Mathis*, 61 N.M. at 337, 300 P.2d at 487; *accord Lujan*, 78 N.M. at 564, 434 P.2d at 386; *Baxter*, 113 N.M. at 49, 822 P.2d at 1132; *Sheraden v. Black*, 107 N.M. 76, 81, 752 P.2d 791, 796 (Ct.App.1988). "The amount of awards necessarily rests with the good sense and deliberate judgment of the tribunal assigned by law to ascertain what is just compensation, and, in the final analysis, each case must be decided on its own facts and circumstances." *Powers v. Campbell*, 79 N.M. 302, 304, 442 P.2d 792, 794 (1968).

{14} We recognize that in determining whether an award is excessive, the trial judge may not weigh the evidence but must determine excessiveness as a matter of law. *See Chavez–Rey*, 99 N.M. at 379, 658 P.2d at 454. Thus, in some ways, the trial judge must make the same legal determination that this Court must make on appeal. However, the trial judge is in a unique position to perform the critical first check on the jury's judgment. As this Court noted in *Grammer*, both the trial judge and the jury are crucial to an accurate, just assessment of pain and suffering:

> This evaluation is for the jury to determine and for the trial court to approve or disapprove. When the jury makes a determination and the trial court approves, the amount awarded in dollars stands in the strongest position known in the law. The trial court sees the various witnesses, observes their demeanor during direct and cross-examination, as well as the attitude of the jurors during the progress of the trial, and the conduct of lawyers. We read the cold record.

93 N.M. at 695, 604 P.2d at 833; *see also Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 804 (Utah 1991) (trial judge should determine whether jury verdict is excessive in first instance because judge was present for entire trial). In addition, the trial judge's experience with juries in the community provides an indispensable safeguard built into our American civil jury system. *See id.* at 802 n. 15 (trial judge has duty to act unflinchingly as thirteenth juror to prevent jury system from becoming "a capricious and intolerable tyranny").

{15} From the standpoint of judicial economy, it also makes more sense for the trial judge to present the plaintiff with the option of choosing between remittitur and a new trial. Depending on the amount set by the trial judge to be remitted, the plaintiff may elect to accept remittitur instead of a new trial, particularly because an order granting remittitur or a new trial is not immediately appealable. *See Chavez–Rey*, 99 N.M. at 379, 658 P.2d at 454. Thus, although the trial judge may be reluctant to set a dollar amount to be remitted, that decision may actually eliminate the need for a new trial or appeal. *See Crookston*, 817 P.2d at 803 (trial court's decision to order remittitur or new trial "may encourage the parties to come to some mutually agreeable solution rather than incur the time and expense of a new trial"). It is uniquely the job of the trial judge to make this decision in the first instance.

{16} We can understand the trial judge's frustration at the difficulty of assessing the value of pain and suffering, and we appreciate the judge's lament for a fixed, mathematical formula. But time and again our appellate courts have come to the conclusion that the best way to arrive at a reasonable award of damages is for the trial judge and the jury to work together, each diligently performing its respective duty to arrive at a decision that is as fair as humanly possible under the facts and circumstances of a given case. If the lack of mathematical precision were to cause the trial court to refrain from performing its role as the first check on the jury's verdict, then the parties would suffer the injustice of an excessive verdict being allowed to stand.

See *Best v. Taylor Mach. Works,* 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057, 1080 (1997) (inherent power of the trial judge to act as a check on excessive verdicts "is essential to the judicial management of trials"). Equally important, such failure to act would weaken the public confidence on which our judicial system depends for its survival.

{17} Concern about excessive jury verdicts is part of the public debate currently focused on the American jury system. The trial judge is an equal partner in that system, which depends on the review and oversight function of the trial judge to correct the occasional aberrant verdict, either too high or too low, by using the tools at hand. These tools do not include a specific formula for pain and suffering, and any such formula risks being arbitrary at the margins, thereby substituting one problem for another. If our courts fail to use these tools, no matter how imprecise, we merely fuel this debate and invite the justifiable criticism of the public. The courts have a duty to act.

**CONCLUSION**

{18} In short, the trial judge still has important work to do in this case. The judge's knowledge of the trial proceedings is critical to a thorough evaluation of the jury verdict using the broad, equitable standard of judicial review that has evolved over time. We reverse and remand for that purpose. By remanding this case to the trial judge for further consideration, we are not suggesting that we necessarily agree or disagree with the trial judge's initial determination that the jury verdict shocked the conscience. Before we can review that matter, the trial judge must first decide whether to order a remittitur and, if so, in what amount, through the exercise of the enlightened conscience of the trial court.

{19} IT IS SO ORDERED.

ALARID and WECHSLER, JJ., concur.