This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**VILLAGE OF HATCH AREA BUSINESSES OR RESIDENTS:  MARIA R. BILBOA, LUZ ELENA BILBOA, LAWRENCE R. BUCKELEW, ESEQUIEL C. CASTRO, ALICIA L. CASTRO, GREGORY GABALDON, VERONICA GABALDON, DOMINGO GOMEZ, ALFREDO GRANADOS, RALPH KASSIAN, MARGIE C. MIRABEL, MARGIE MORA, JOSE LUIS OLVERA, GREGORIO OLVERA, PAULETTE PALTZA, ROBERT M. PADILLA, CARLA P. YAW, and ELVIS YAW,**

Plaintiffs-Appellants,

v.                                                                                          NO. 30,265

**RHONDA G. FAUGHT, SECRETARY OF NEW MEXICO DEPARTMENT OF TRANSPORTATION, an Agency of the STATE OF NEW MEXICO,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**James T. Martin, District Judge**

Rita Nuñez Neumann
Las Cruces, NM

for Appellants

Miller Stratvert, P.A.

Joshua L. Smith
Lawrence R. White
Las Cruces, NM

for Appellees

**MEMORANDUM OPINION**

**VANZI, Judge.**

Maria R. Bilboa, Luz Elena Bilboa, Lawrence R. Buckelew, Esequiel C. Castro, Alicia L. Castro, Gregory Gabaldon, Veronica Gabaldon, Domingo Gomez, Alfredo Granados, Ralph Kassian, Margie Mirabel, Margie Mora, Jose Luis Olvera, Gregorio Olvera, Paulette Paltza, Robert M. Padilla, Carla P. Yaw, and Elvis Yaw (Plaintiffs) appeal the district court's order dismissing their lawsuit against the New Mexico Department of Transportation (NMDOT) with prejudice. The district court dismissed Plaintiffs' lawsuit as a sanction for discovery violations. We affirm the dismissal of Plaintiffs' complaint; however, we reverse the district court's award of attorney fees and costs and remand for further proceedings consistent with this Opinion.

**BACKGROUND**

Because the parties are familiar with the facts and proceedings and because this is a memorandum opinion, we do not provide a detailed discussion of this case's background. We include background information as necessary in connection with each issue raised. Before we begin, however, we note that neither party has done a satisfactory job of citing to the record in this case, leaving this Court with the tedious

task of having to sift through the entire record in order to effectively review the parties' arguments and the basis of the district court's ruling.

Plaintiffs filed their complaint against NMDOT, Burlington Northern Santa Fe Railroad (BNSF), and Doña Ana County on October 10, 2007. Plaintiffs subsequently added Southwestern Railroad Company (SRC) (collectively, Defendants) as a defendant. Plaintiffs alleged that, as a result of a powerful rainstorm on August 15, 2006, their homes and businesses were severely damaged. Plaintiffs' theory of the case was that the bridge over the Placitas Arroyo was clogged with debris and railroad ties at the time of the storm and that Defendants' failure to clear the debris caused the flooding and damage to their property. With regard to NMDOT specifically, Plaintiffs alleged that they had made numerous requests to NMDOT prior to the rainfall to clear the bridge of debris and that it repeatedly failed to do so.

Plaintiffs' complaint also asserted that the "[m]athematical probability indicates the storm was close to a ten[-]year storm and not a hundred[-]year storm as stated by . . . Defendant [Flood Commission Director]." Each Plaintiff then listed the amount of monetary damage to his or her personal, real, and business property. For example, Maria and Luz Bilboa alleged personal damages in the amount of $25,000, whereas Lawrence and Judy Buckelew claimed damage to their personal property and residence in the amount of $80,000. NMDOT and other Defendants filed answers to the complaint, and the parties thereafter began the discovery phase of the lawsuit.

The parties participated in a status conference on May 28, 2008, after which the district court entered a first amended scheduling order requiring, among other things, that Plaintiffs serve their experts' reports on defense counsel by July 28, 2008, and that all written discovery and depositions of fact witnesses be completed by March 2, 2009. It appears Plaintiffs moved to amend the first amended scheduling order to extend the deadline for the submission of the expert report; however, it is unclear from the record whether that motion was granted.

On June 2, 2008, BNSF filed its first motion to compel answers to BNSF's first set of discovery. The motion was granted. Thus began the filing of a series of motions to dismiss for discovery violations, which takes up the bulk of the fifteen-volume record proper on appeal. BNSF filed a motion to dismiss Plaintiffs' second amended complaint for willful discovery abuses on December 19, 2008. That motion was joined by SRC. Two months later, on February 25, 2009, NMDOT filed its motion for discovery sanctions. NMDOT filed a supplemental motion shortly thereafter. Both BNSF and SRC filed notices of joinder in NMDOT's motion for discovery sanctions. The district court held a two-day hearing on the various motions for sanctions, and the parties filed proposed findings of fact and conclusions of law. Although the transcripts that the parties provided on appeal are incomplete and there is no order in the record indicating the court's rulings from the bench, if any, it appears the district court took the matter under advisement to decide appropriate

4

sanctions. Nevertheless, prior to the entry of an order, Plaintiffs agreed to dismiss all claims against BNSF and SRC with prejudice and, as a result, those Defendants did not seek to have sanctions entered against Plaintiffs "for their willful abuses of discovery."

Well before its dismissal from the case, BNSF had also filed a motion for Rule 1-011 NMRA sanctions against Plaintiffs' counsel, Rita Nuñez Neumann, asserting that Ms. Neumann had falsely contended that BNSF's counsel had improperly contacted her clients directly. Although BNSF advised Ms. Neumann of her error, she refused to correct it. The district court granted BNSF's motion, sanctioned Ms. Neumann and her co-counsel, and ordered them to pay fees and costs in the amount of $4,197.95.

On February 9, 2010, NMDOT filed its second motion for discovery sanctions due to Plaintiffs' continued refusal to respond to discovery. Plaintiffs responded on February 18, 2010, contending that amended responses had been served on that date. Several weeks later, the district court entered a detailed twenty-one-page order on NMDOT's motion for discovery sanctions and dismissed Plaintiffs' lawsuit with prejudice. Plaintiffs filed a motion for reconsideration that the district court denied as moot based on Plaintiffs' filing of this appeal.

**DISCUSSION**

Plaintiffs raise four issues on appeal. They contend that the district court (1) erred when it dismissed their complaint for discovery violations under Rule 1-037 NMRA, (2) erred in determining that an abuse of process occurred with the filing of the complaint, (3) erred when it issued Rule 1-011 sanctions against Plaintiffs and their counsel, and (4) violated Plaintiffs' constitutional guarantees of due process. We address each of Plaintiffs' arguments below.

**Dismissal for Discovery Violations Under Rule 1-037**

We review a district court's grant of Rule 1-037 sanctions for abuse of discretion. *Marchman v. NCNB Tex. Nat'l Bank*, 120 N.M. 74, 90, 898 P.2d 709, 725 (1995); *see also Sandoval v. Martinez*, 109 N.M. 5, 12, 780 P.2d 1152, 1159 (Ct. App. 1989) ("We will not reverse a dismissal under Rule 1-037 unless, after reviewing the full record and the reasons the district court gave for its order, we are left with a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." (internal quotation marks and citation omitted)). In *Sandoval*, 109 N.M. at 8-9, 780 P.2d at 1155-56, this Court determined that Rule 1-037 applies to false answers to interrogatories as well as to the failure to answer interrogatories. We have said that "[t]he same logic leads us to conclude that the failure to properly supplement answers to interrogatories, or the refusal to answer questions on matters ruled discoverable during a deposition, also falls within the ambit of Rule 1-037." *Allred ex rel. Allred*

6

*v. Bd. of Regents of the Univ. of N.M.*, 1997-NMCA-070, ¶ 19, 123 N.M. 545, 943 P.2d 579.

We recognize that the sanction of dismissal "may only be imposed when the failure to comply is due to the willfulness, bad faith[,] or fault of the disobedient party." *United Nuclear Corp. v. Gen. Atomic Co.*, 96 N.M. 155, 202, 629 P.2d 231, 278 (1980). Such a showing requires either:

> (1) a clear showing of willfulness, bad faith, or other fault in the record;
> or (2) when the record is unclear, more explicit findings by the trial court
> (indicating that that court indeed found willfulness, bad faith, or other
> fault) that are then supported by substantial evidence in the record.

*Allred*, 1997-NMCA-070, ¶ 28. In this context, "willfulness" includes "any conscious or intentional failure to comply . . . as distinguished from accidental or involuntary non-compliance[.]" *United Nuclear*, 96 N.M. at 202, 629 P.2d at 278 (internal quotation marks and citations omitted). A finding of willful conduct may be supported by evidence of numerous discovery violations or a consistent failure to supplement answers to interrogatories. *See, e.g.*, *Reed v. Furr's Supermarkets, Inc.*, 2000-NMCA-091, ¶¶ 22, 30, 129 N.M. 639, 11 P.3d 603; *Allred*, 1997-NMCA-070, ¶ 30. We begin with a review of the district court's order on discovery sanctions and then address Plaintiffs' argument that the court erred in dismissing their complaint under Rule 1-037.

In this case, the district court entered a twenty-one-page order on NMDOT's motion for discovery sanctions. After setting forth the factual history of the case, the court detailed the "procedural difficulty with discovery." The district court explained that soon after Defendants' answers were filed, Defendants began experiencing difficulties obtaining discovery from Plaintiffs and their attorneys. In particular, NMDOT had sent out sixty-one sets of interrogatories to the original Plaintiffs in the case and then sent two more requests for production. On two separate occasions, NMDOT requested that Plaintiffs correct their inadequate responses to discovery. With regard to NMDOT's discovery requests, the district court found that (1) all Plaintiffs provided false information concerning their expert; (2) on numerous occasions, Plaintiffs stated that they were supplementing their responses to interrogatories but did not do so; (3) Plaintiffs "consistently failed and refused to indicate the tangible or documentary evidence they would offer as exhibits against NMDOT"; (4) "[t]his abusive practice was a consistent pattern for [P]laintiffs and their attorneys"; and (5) there was a pattern and practice of Plaintiffs and their counsel to refuse to comply with requests for production of documents. The district court then specifically identified deficiencies in discovery responses as to individual Plaintiffs. Further, the court found that Ms. Neumann made "willfully false and misleading" statements concerning why she had failed to provide an expert witness report from their expert, Mr. Williams.

8

In addition to the deficient and inadequate responses to NMDOT's discovery requests, the order on discovery sanctions detailed false answers to interrogatories, requests for production, and requests for admission propounded by BNSF, as well as false deposition testimony regarding the existence of railroad ties beside the rail lines and in the arroyos prior to the storm. The district court further documented Plaintiffs' false statements that the "Hydrological Study Procedure" was an "expert report showing that the storm was a ten-year storm, and the probability is that there would not have been a severe flood but for the trashed railroad ties." It noted that Mr. Williams "renounced the allegations" that the storm was a ten-year storm, that Mr. Williams was not provided a copy of the complaint to review and that as late as June 2008, he was not prepared to say that the August 2006 storm was a ten-year storm and, in fact, had analyzed the storm as a hundred-year storm.

The district court's conclusions of law were similarly detailed. After setting forth the relevant case law, the court reiterated the numerous instances of discovery abuse and false statements by both Plaintiffs and Ms. Neumann and found them to be willful and deliberate. In considering the appropriate sanctions, the court noted that the range could be as minor as a fine or as severe as dismissal and acknowledged that sanctions must be proportional to the abuse. Ultimately, the district court concluded that Plaintiffs' conduct "can only be described as deceitful, willful and done in bad faith, with a complete and callous disregard for their discovery obligations." Further,

9

it found that Ms. Neumann "cast false allegations in an effort to deflect responsibility" in the case, she constructed falsehoods, and she assisted her clients in falsifying affidavits in support of her theory of the case. The district court decided it had no option but to sanction Plaintiffs and their counsel with "the ultimate sanction, dismissal with prejudice." It is against this backdrop that we now consider Plaintiffs' argument that the district court erred in granting NMDOT's motion for discovery abuse.

Plaintiffs' argument is not the model of clarity. They contend that the district court abused its discretion when it dismissed the complaint for discovery violations under Rule 1-037 because it misapprehended the law. However, Plaintiffs do not state which law the district court allegedly misapprehended. Their argument appears to be that the district court violated Plaintiffs' right to due process because the court did not issue an order to compel discovery prior to dismissing the complaint. Plaintiffs do not cite to any case stating that a court order compelling discovery is a prerequisite to the imposition of sanctions. Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

More importantly, we have New Mexico law to the contrary. As a preliminary matter, we observe that the district court did not base the dismissal of Plaintiffs' complaint on the violation of any court order. Therefore, we treat its order as a

10

dismissal under Rule 1-037(D) for various violations of the rules of discovery. In *Thornfield v. First State Bank of Rio Rancho*, 103 N.M. 229, 232, 704 P.2d 1105, 1108 (Ct. App. 1983), we said that "[n]othing on the face of Rule [1-0]37 requires notice before imposition of sanctions. The fact that the sanctions are spelled out in the rule provides ample notice." More recently, in *Sandoval*, 109 N.M. at 7, 780 P.2d at 1154, this Court made clear that Rule 1-037(D) authorizes the sanction of dismissal even when there has been no court order. *Sandoval* further provides that, while it would ordinarily be the best procedure to have a hearing before ordering the severe sanction of dismissal, due process does not require that such a hearing take place. 109 N.M. at 12-13, 780 P.2d 1159-60. We therefore reject Plaintiffs' contention that the district court's failure to issue an order to compel prior to dismissal of their complaint is a misapprehension of the law requiring reversal.

To the extent that Plaintiffs argue dismissal was in error because they "produced the evidence necessary to evaluate and resolve the dispute" in compliance with Rule 1-037, we are not persuaded. Plaintiffs state that the dismissal order improperly relies on the February 25, 2009 NMDOT motion and that the facts "fail to take into account a full year of supplementation of discovery." However, Plaintiffs fail to cite to any place in the record when or where this "full year of supplementation of discovery" took place. As a general rule, this Court "will not search the record to find evidence to support an appellant's claims." *In re Estate of Heeter*, 113 N.M. 691,

11

694, 831 P.2d 990, 993 (Ct. App. 1992). We nevertheless did so here and found nothing to support Plaintiffs' contentions. We explain.

NMDOT filed its first motion for discovery sanctions on February 25, 2009. The motion set forth in detail the incomplete discovery responses of Plaintiffs and the inadequate responses to NMDOT's second and third request for production. The motion attached as exhibits over 150 pages of examples of the incomplete and meaningless responses provided by Plaintiffs as well as NMDOT's efforts to resolve the issue prior to filing the motion. For example, NMDOT sent a letter to Plaintiffs' counsel dated October 23, 2008, seeking to have Plaintiffs comply with the discovery request. On December 5, 2008, NMDOT sent a third letter to Ms. Neumann concerning problems with the discovery responses. The record does not show that Plaintiffs met their discovery obligations or that they filed the appropriate motions to be relieved from doing so prior to the filing of NMDOT's motion.

Furthermore, Plaintiffs' response to NMDOT's motion for discovery sanctions did not directly respond to NMDOT's arguments at all except to admit that then-plaintiffs, Mr. Kloske and Ms. Hayner, did not initially supply discovery responses. And the response does not contend that Plaintiffs had—or intended to—supplement their discovery responses. Instead, Plaintiffs made several unsupported and misleading assertions presumably to deflect from the inadequacy of their discovery responses. For example, Plaintiffs asserted that many of them "could not read, write[,]

12

or speak English," that many of them "have been suffering from untreated post traumatic stress," and that many of the Plaintiffs were married couples who for "possibly social reasons" believed they could jointly answer interrogatories. The only support for this last assertion came from an affidavit signed by Ms. Neumann's husband. Further, Plaintiffs turned the discovery process on its head by blaming NMDOT for its failure to supply discovery to Plaintiffs, yet Plaintiffs did not provide a single example of having supplemented their discovery responses apart from the delayed responses filed by Mr. Kloske and Ms. Hayner.

On April 8, 2009, NMDOT filed a supplemental motion in support of Rule 1-037 sanctions, and Plaintiffs' response was again unresponsive. Plaintiffs then filed a brief titled, "Offer of Proof to Motion by NMDOT to Dismiss for Abuse of Discovery." To the extent Plaintiffs contend that their tenders of proof with expected testimony satisfied their discovery obligations, we disagree. First, only twenty Plaintiffs completed the expected informal offer of testimony "in order to rehabilitate themselves," and many others "could not be reached because of the time element." In the course of preparing their informal offers of expected testimony, Plaintiffs were allegedly "told that they could be required to explain this testimony again on the stand in the courtroom[,] and if there were discrepancies they would have to be prepared to explain the reason."

13

"The discovery rules were adopted in the first place to eliminate surprise and allow for full preparation of a case." *Redman v. Bd. of Regents of N.M. Sch. For Visually Handicapped*, 102 N.M. 234, 238, 693 P.2d 1266, 1270 (Ct. App. 1984). Here, the first amended scheduling order required that the depositions of all fact witnesses be completed by March 2, 2009. As a result, many, if not all, Plaintiffs had already been deposed, and Plaintiffs' newly proffered and apparently inconsistent testimony effectively hampered and delayed the progress of this case. Moreover, the few offers of testimony provided are neither proper supplements to NMDOT's discovery requests nor do they adequately respond to the interrogatories and requests for production propounded. We give one example. In its motion for discovery sanctions, NMDOT stated that Plaintiff Greg Gabaldon did not provide complete responses to Interrogatories 2, 3, 4, 6, 9, and 10, and the entire request for production. The interrogatories asked for the list of witnesses to be called at trial, a list of who might have knowledge of the lawsuit, a description of the exhibits to be used at trial, an itemized list of the damages suffered, whether or not anyone had investigated the complaint, and information concerning expert witnesses who might be called at trial. Contrary to Plaintiffs' assertion, Mr. Gabaldon's expected informal offer of testimony does not provide supplemental answers to any of the deficient interrogatories nor does he attach any documents responsive to the requests for production raised in NMDOT's motion. For example, he again fails to provide an itemized list of the allegedly

14

$175,000 worth of damages suffered, and, to the proffered statement, "I produced the following receipts and evidence concerning damages," his incomprehensible response was: "about my house for the production request." There is no excuse for this failure to comply with the requirement to supplement answers to interrogatories and to comply with NMDOT's reasonable discovery requests.

On February 9, 2010, NMDOT filed its second motion for discovery sanctions. The motion noted that in March 2009, all Defendants had moved for discovery sanctions and that the district court "made numerous findings, among which were that Plaintiffs' responses to NMDOT's interrogatories were not only incomplete but intentionally inaccurate." NMDOT argued that since the district court's 2009 ruling, Plaintiffs had continued to fail or refuse to submit appropriate discovery responses. Again it attached numerous exhibits demonstrating the deficient discovery responses by the remaining Plaintiffs. Plaintiffs responded to NMDOT's motion on February 18, 2010, and for the first time since originally being served on June 23, 2008, they filed amended responses to NMDOT's first set of interrogatories and requests for production. Before NMDOT had the opportunity to reply to Plaintiffs' response, the district court entered its order dismissing Plaintiffs' complaint.

Contrary to Plaintiffs' argument, we conclude that they simply did not timely produce "the evidence necessary to evaluate and resolve the dispute." To the extent amended responses were filed, that was not done until almost two years after first

15

being served with the requests and only after several motions for sanctions were filed and argued. "The design of the discovery process is to avoid surprise in trial preparation and promote the opposing party's ability to obtain the evidence necessary to evaluate and resolve the dispute." *Reed*, 2000-NMCA-091, ¶ 13 (alteration, internal quotation marks, and citation omitted). In this case, Plaintiffs' discovery abuse was not a situation of isolated instances of vague and unresponsive answers to a discovery request. Rather, Plaintiffs repeatedly refused to provide full and complete information to NMDOT. When this occurs, the failure to comply with discovery obligations is a willful refusal under Rule 1-037(D).

We take this opportunity to note that the district court's consideration of Plaintiffs' false affidavits in response to BNSF's requests for admission further established Plaintiffs' on-going and willful misrepresentations. Although BNSF was no longer a party to the case when the district court issued its order of dismissal, the admissions at issue addressed the underlying claims and were therefore relevant and helpful to all Defendants, including NMDOT. In sum, the record indicates that the district court took into account the potential prejudice to NMDOT from all the discovery violations that were at play in this multiparty litigation. The sheer volume of misrepresentations and repeated disregard for the rules of discovery persuaded the district court that dismissal was appropriate. The record supports this conclusion.

16

Finally, we briefly address Plaintiffs' argument that NMDOT had unclean hands and that, therefore, equitable estoppel should apply to deny the motion to dismiss for discovery sanctions. Plaintiffs provide no support and no argument for the assertion that NMDOT's alleged failure to respond to Plaintiffs' discovery requests somehow excuses Plaintiffs from meeting their own discovery obligations under the rules of civil procedure. "Issues raised in appellate briefs that are unsupported by cited authority will not be reviewed . . . on appeal." *Wilburn v. Stewart*, 110 N.M. 268, 272, 794 P.2d 1197, 1201 (1990). In any event, a "failure to act . . . may not be excused on the grounds that the discovery sought is objectionable unless the party failing to act has applied for a protective order." *Allred*, 1997-NMCA-070, ¶ 18 (internal quotation marks and citation omitted). There is no evidence that occurred here, and we therefore do not consider this argument further.

We conclude that (1) the district court was not required to enter an order to compel discovery before dismissing Plaintiffs' complaint; (2) Plaintiffs have not shown that they timely and fully supplemented their discovery as required by the rules of civil procedure; and (3) Plaintiffs have provided no evidentiary or legal support for their assertion that NMDOT had unclean hands and, therefore, equitable estoppel should apply to deny the motion for sanctions. Moreover, our full-record review amply supports the district court's exercise of its discretion in dismissing the

17

complaint as a sanction for the repeated efforts of Plaintiffs to thwart discovery in this case.

**Abuse of Process and Rule 1-011 Sanctions**

Because Plaintiffs' Points II and IV in their brief in chief both involve the issue of Rule 1-011 sanctions, we discuss them together here. Plaintiffs argue that the district court erred in determining an abuse of process occurred with the filing of the complaint and that it erred in issuing Rule 1-011 sanctions against them. We begin with the Rule 1-011 sanction issue.

Again, though not entirely clear, Plaintiffs appear to be making two arguments in support of their assertion that Rule 1-011 sanctions should not have been imposed. First, they contend that the district court's imposition of Rule 1-011 sanctions must be reversed because the court erroneously found that Ms. Neumann did not have a good faith basis to allege in the complaint that the flood was a ten-year storm, that BNSF replaced the ties, that old ties were left by the side of the rail line, and that Mr. Williams was Plaintiffs' expert. Second, they challenge the district court's statement that Ms. Neumann had no basis for alleging the existence of a possible conspiracy between Mr. Williams and Mr. Chavez. Notwithstanding Plaintiffs' argument, we note that nowhere in the district court's twenty-one-page order on discovery sanctions does it state that it was imposing Rule 1-011 sanctions against Plaintiffs or Ms. Neumann. And Plaintiffs do not cite to any portion of the order indicating where the

18

district court made such a ruling. Our review of the record shows that the only motion for Rule 1-011 sanctions in this case was filed by BNSF against Plaintiffs. That motion, involving Ms. Neumann's allegation that BNSF had improperly contacted certain Plaintiffs, was granted on May 5, 2009, and is not at issue here.

Likewise, contrary to the argument in Point IV, we find nothing in the district court's order on discovery sanctions that it was imposing Rule 1-011 sanctions against Plaintiffs on the basis that an abuse of process occurred with the filing of the complaint. Because Plaintiffs' arguments in Points II and IV of their brief in chief are premised solely on whether the district court abused its discretion in awarding Rule 1-011 sanctions and because we conclude that the district court did not impose Rule 1-011 sanctions against Plaintiffs or Ms. Neumann, we do not consider these arguments.

**Constitutional Guarantees**

Lastly, we turn to Plaintiffs' argument that the district court violated Plaintiffs' rights to equal protection and due process under the United States and New Mexico Constitutions. The constitutionality of the district court's rulings present this Court with a question of law that we review de novo. *See Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 19, 137 N.M. 161, 108 P.3d 1019. In this case, Plaintiffs contend that the district court exhibited a pattern of favoritism towards NMDOT and other Defendants that rose to a level of "fundamental unfairness

19

within the system." According to Plaintiffs, this "pattern of favoritism" was established by the following conduct: (1) the district court violated Rule 1-054.1 NMRA when it took NMDOT's motion to dismiss for discovery violations under advisement and did not enter an order within the permissible time frame; (2) the district court violated Rule 1-007.1(H) NMRA by ruling on NMDOT's second motion for sanctions before NMDOT filed its reply brief or certificate of completion of briefing; (3) NMDOT violated Rule 1-037(A) by failing to give notice or file a motion to compel discovery before filing the motion for sanctions, and the district court violated Section B of that rule by failing to issue an order compelling discovery; (4) the district court refused to issue Rule 1-011 sanctions against a BNSF attorney for filing a response brief with "an indecipherable signature of someone not an attorney of record"; and (5) the district court failed to sanction a BNSF attorney for attempting to file a deposition without a court order or permission to do so, and without Plaintiffs' knowledge.

We fail to see how the above rises to the level of violating Plaintiffs' constitutional rights. Each of the alleged violations cited by Plaintiffs involve a ruling by the district court that would be subject to review under an abuse of discretion standard. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. Plaintiffs have not shown

20

how the district court abused its discretion in issuing—or, in some instances, not issuing—these rulings much less that they rise to the level of a constitutional violation. Moreover, Plaintiffs cite to no authority for the proposition that, under the facts presented, this Court could determine that their constitutional rights were violated. *See In re Adoption of Doe*, 100 N.M. at 765, 676 P.2d at 1330 (stating that issues unsupported by cited authority will not be reviewed on appeal). The district court did not violate Plaintiffs' constitutional rights.

**Attorney Fees and Costs**

Although we affirm the district court's dismissal of Plaintiffs' complaint, we reverse its order that Ms. Neumann and all remaining Plaintiffs are jointly and severally liable for the attorney fees and costs incurred by NMDOT in defending this matter. The district court listed the deficient and inadequate discovery responses of several Plaintiffs, including some who were no longer in the case, and some who were represented by other counsel, yet the order contemplates that the remaining Plaintiffs and Ms. Neumann bear the costs and fees for *all* of NMDOT's defense in this matter. We are unable to find support for the district court's ruling in this regard and, with the guidelines set forth below, remand for a determination of the reasonable expenses and fees caused by Ms. Neumann's and the remaining Plaintiffs' repeated disregard for the rules of discovery.

21

We have already concluded that the district court's order on discovery sanctions was based on Plaintiffs' violation of Rule 1-037(D). That provision allows a district court to dismiss an action for violating discovery rules and further states that "[i]n lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to provide discovery responses]." Rule 1-037(D). A plain reading of Rule 1-037(D) makes clear that the rule only allows a district court to order a party that violated the discovery rules to reimburse the prevailing party for all expenses incurred in obtaining the sanction and not for expenses amassed during the entire course of the litigation. *See Sandoval*, 109 N.M. at 9, 780 P.2d at 1156 (giving an example of the types of expenses that may be incurred when an interrogatory answer falsely denied the existence of discoverable information). In other words, an award of attorney fees and costs under Rule 1-037 is designed only to compensate a party for the expenses incurred in opposing another party's bad faith conduct. We therefore reverse the district court's order awarding NMDOT all costs and fees for having defended the matter and for awarding such costs and fees against Ms. Neumann and all remaining Plaintiffs, jointly and severally. We remand for consideration of an appropriate award of expenses incurred by NMDOT in seeking sanctions against Ms. Neumann and each of the remaining Plaintiffs for their failure to provide discovery in this case.

22

**CONCLUSION**

For the reasons set forth above, the dismissal of Plaintiffs' claims against NMDOT was a proper exercise of the district court's discretion. We reverse and remand on the issue of attorney fees and costs.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**I CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

**MICHAEL E. VIGIL, Judge (dissenting).**

**VIGIL, Judge (dissenting).**

The district court dismissed the complaint of certain Plaintiffs without setting forth what discovery violations, if any, they committed; the district court dismissed certain Plaintiffs' claims against NMDOT based on their asserted discovery violations relating to BNSF after their claims against BNSF were dismissed; the district court relied on stale information one year old, much of which was no longer relevant when the complaint was dismissed; and the district court ignored or failed to consider material facts presented to it by Plaintiffs in opposition to NMDOT's motions to dismiss. For these reasons, I conclude that the district court abused its discretion in dismissing Plaintiffs' complaint with prejudice for willful and deliberate discovery violations. Since the majority disagrees, I dissent.

The sanction of dismissal "may only be imposed when the failure to comply is due to the willfulness, bad faith or fault *of the disobedient party*." *United Nuclear*, 96 N.M. at 202, 629 P.2d at 278 (emphasis added). In this context, "willfulness" includes "any conscious or intentional failure to comply[,] as distinguished from accidental or involuntary non-compliance." *Id.* Such a showing requires either:

> (1) a clear showing of willfulness, bad faith, or other fault in the record; or (2) when the record is unclear, more explicit findings by the trial court (indicating that that court indeed found willfulness, bad faith, or other fault) that are then supported by substantial evidence in the record.

24

*Allred*, 1997-NMCA-070, ¶ 28.

On appeal, we review a district court order imposing sanctions for discovery violations for abuse of discretion. *Id.* ¶ 17. When the sanction of dismissal for discovery violations is imposed, our scrutiny is heightened, albeit still under an abuse of discretion standard. *Lewis ex rel. Lewis v. Samson*, 2001-NMSC-035, ¶ 13, 131 N.M. 317, 35 P.3d 972. Of course, this presumes that discretion was in fact exercised, and the failure to exercise discretion is, in itself, reversible error. *Sandoval v. Chrysler Corp.*, 1998-NMCA-085, ¶ 12, 125 N.M. 292, 960 P.2d 834. In addition, "the trial court abuses discretion when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Aragon v. Brown*, 2003-NMCA-126, ¶ 9, 134 N.M. 459, 78 P.3d 913. In order to determine whether these standards were met, I turn to the facts. This recitation necessarily includes many facts set forth by the majority, while adding others.

Eighty-five Plaintiffs originally brought suit. Forty-seven Plaintiffs were eventually dismissed from the suit, and, in April 2009, Mr. Keith Burn of the the Pickett Law Firm was replaced as counsel for approximately twenty-two Plaintiffs.

This left the remaining eighteen Plaintiffs who are the appellants in the case now before us.

BNSF filed a motion to dismiss on December 19, 2008, alleging willful discovery abuses by Plaintiffs. SRC joined in the motion. Following a hearing, the parties filed requested findings of fact and conclusions of law. Before the district court ruled on BNSF's motion, BNSF notified the court on June 19, 2009, that all Plaintiffs (except Mr. Kloske, and we have no issues concerning him) agreed to dismiss their claims against BNSF and SRC with prejudice. Accordingly, BNSF and SRC advised the court that they did not seek sanctions "against those Plaintiffs for their willful abuses of discovery." On June 23, 2009, three stipulated orders dismissing all of Plaintiffs' claims against BNSF and SRC with prejudice were filed. One was by two Plaintiffs, who were now representing themselves pro se. The twenty-two Plaintiffs represented by Mr. Burn dismissed their claims against BNSF and SRC in the second order, and the remaining Plaintiffs, represented by Ms. Neumann, dismissed their claims against BNSF and SRC in the third order. Each order further directed, "Each Party shall bear its own costs and attorneys' fees."

NMDOT filed its own motion for discovery sanctions on February 25, 2009. NMDOT attached answers to interrogatories given by fifteen Plaintiffs, contending

26

they were incomplete and that the answers to interrogatories of the remaining (twelve) Plaintiffs were incomplete as well. However, the answers of the remaining (twelve) Plaintiffs were not attached, "given the amount of materials being submitted on this first discovery sanction motion." The fifteen Plaintiffs identified and the asserted deficiencies (RP Vol 8, 2080-81) are the same exact ones set forth in the order on discovery sanction that is before us on appeal. Moreover, NMDOT contended, Plaintiffs had not properly responded to its second and third requests for production of documents. Plaintiffs responded to the motion on March 10, 2009, and NMDOT filed its reply on March 19, 2009. Additional pleadings directed to NMDOT's motion followed.

Among the additional pleadings filed on April 13, 2009, was an "offer of proof" of twenty Plaintiffs of the thirty-four who remained in the case at that time. These consisted of statements under oath addressing many of the asserted alleged deficiencies NMDOT asserted were incomplete or missing. Moreover, Plaintiffs alleged, NMDOT was itself abusing the discovery process. NMDOT filed a response asserting that contrary to Plaintiffs' assertions, NMDOT itself did not abuse discovery. On April 14, 2009, NMDOT filed its requested findings of fact and conclusions of law, and Plaintiffs' requested findings of fact and conclusions of law

27

were filed on April 24, 2009. While NMDOT's motion was pending, two additional significant orders were filed.

First, on June 23, 2009, contemporaneous with the three stipulated orders dismissing all of Plaintiffs' claims against BNSF and SRC, several Plaintiffs, BNSF, and NMDOT stipulated to a fourth order, in which those Plaintiffs agreed to a dismissal of *all* their claims arising out of the August 15, 2006 flood with prejudice "for failure to respond to discovery." This order likewise directed, "Each Party shall bear its own costs and attorneys' fees."

Secondly, those Plaintiffs represented by Mr. Burn and NMDOT entered into a stipulated order filed on December 17, 2009, in which those Plaintiffs agreed to dismiss all their claims against NMDOT with prejudice. This order further provided that each party would bear its own costs and attorneys' fees, and NMDOT "waives all claims for sanctions against these specific Plaintiffs." With the entry of this order, only the eighteen Plaintiffs bringing the appeal before us, represented by Ms. Neumann, remained in the case. Moreover, the only claims they had left were those they had brought against NMDOT.

On February 9, 2010, NMDOT filed a second motion for discovery sanctions. Attached to this motion were the discovery responses of Plaintiffs that were not

28

previously provided to the district court when it filed its first motion on February 25, 2009. Therein, NMDOT also noted that following hearings on sanctions, "The court took the matter under advisement to decide appropriate sanctions, and indicated that individual sanctions would be levied against individual Plaintiffs, rather than a lump sum penalty against all Plaintiffs."

Plaintiffs responded to NMDOT's second motion for discovery sanctions on February 18, 2010. Therein, Plaintiffs stated that documents their expert required to properly respond to NMDOT's discovery (specifically Interrogatory No. 10) were not received from NMDOT until the first week of January 2010, whereupon they were promptly forwarded to the expert. Plaintiffs stated that their expert had completed his report on February 11, 2010, and on February 18, 2010, they served a complete set of amended answers to NMDOT's first set of interrogatories and requests for production. Copies of the amended discovery responses were attached to the response. In addition, Plaintiffs related that they had hired an individual employed by an insurance agency to assist them in computing answers relating to their damages.

On March 3, 2010, the district court filed the order on discovery sanctions that is before us on appeal. Plaintiffs promptly filed a motion for reconsideration on March 5, 2010. Therein Plaintiffs pointed out that NMDOT's motion dealt strictly

29

with answers to interrogatories and requests for production from the NMDOT, but that the order granting sanctions was based on responses made by Plaintiffs to discovery propounded by BNSF, and BNSF was dismissed from the case. Moreover, Plaintiffs noted that they expected NMDOT's motion to be decided on the most recent amended discovery responses provided to NMDOT. In this regard, Plaintiffs repeated:

> The delay incurred by the Plaintiffs dealt with Interrogatory 10, the answer of which was dependent on discovery from the NMDOT. Dr. Samani [Plaintiffs' expert] could not complete his final report for the Plaintiffs until the NMDOT produced the requested discovery. It took fourteen months for the NMDOT to give up the documents.

Plaintiffs attached Dr. Samani's affidavit to the response, which set forth his calculations and conclusion that the bridge over the Placitas Arroyo "was probably blocked by sediment or a combination of sediment and trash such that the capacity of the structure was reduced to 40% of the peak 100 year flood capacity." Further, he said, "It is my professional opinion after reviewing all the NMDOT documents that the breach of the channel embankment was caused by the reduced channel capacity, and not by an extreme storm." After NMDOT responded on March 17, 2010, Plaintiffs replied on March 19, 2010.

While briefing was being completed on the motion to reconsider, Plaintiffs filed a notice of appeal on March 10, 2010, appealing from the March 3, 2010 order of

30

dismissal. On April 13, 2010, the district court denied Plaintiffs' motion to reconsider on the basis that because Plaintiffs had filed the notice of appeal, "the motion should be denied as moot."

As a preliminary matter, I observe that this is not a proper basis for denying the motion to reconsider. When a party files a motion asking the district court to alter or amend its decision, the motion effectively renders the decision non-final for purposes of appeal. *See Dickens v. Laurel Healthcare, LLC*, 2009-NMCA-122, ¶ 4, 147 N.M. 303, 222 P.3d 675 (observing that the filing of "a motion asking the district court to alter or change the same order . . . on appeal . . . render[s] the order not final for purposes of appeal"); Rule 12-201(D) NMRA ("If a party timely files a motion pursuant to . . . Rule 1-059 NMRA, the full time prescribed in this rule for the filing of the notice of appeal shall commence to run and be computed from the entry of an order expressly disposing of the motion."). The district court was therefore called upon to address the motion to reconsider on the merits instead of denying it as moot. On this basis alone, we should reverse and remand to the district court to consider the merits of Plaintiffs' motion for reconsideration. *See Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 35, 148 N.M. 627, 241 P.3d 628 (stating that we review a district court ruling on a motion to reconsider for an abuse of discretion); *Aragon*, 2003-

NMCA-126, ¶ 9 (stating that the district court abuses discretion when its discretionary decision is premised on a misapprehension of the law). Since the majority apparently disagrees, however, I now turn to the merits.

**DISCUSSION**

Eighteen Plaintiffs remained in the case when the district court order on discovery sanctions was imposed. They were: (1) Maria R. Bilboa, (2) Luz Elena Bilboa, (3) Lawrence R. Buckelew, (4) Esequiel C. Castro, (5) Alicia L. Castro, (6) Gregory Gabaldon, (7) Veronica Gabaldon, (8) Domingo Gomez, (9) Alfredo Granados, (10) Ralph Kassian, (11) Margie Mirabel, (12) Margie Mora, (13) Jose Luis Olvera, (14) Gregorio Olvera, (15) Paulette Paltza, (16) Robert M. Padilla, (17) Carla P. Yaw, and (18) Elvis Yaw.

Five of the Plaintiffs are not even mentioned in the order on discovery sanctions as having provided deficient discovery responses to NMDOT. They are: (1) Lawrence R. Buckelew, (2) Alicia L. Castro, (3) Veronica Gabaldon, (4) Alfredo Granados, and (5) Gregorio Olvera. Thus, the requisite findings necessary for dismissal because of discovery abuse are completely absent as to these Plaintiffs, and the order on discovery sanctions must be dismissed as to them. Moreover, it is axiomatic that the sanction of dismissal for discovery abuse cannot be imposed upon

32

a party because a separate party has abused its discovery obligations. *See Reed*, 2000-NMCA-091, ¶¶ 9-10.

In addition, the district court failed to consider highly relevant information pertinent to whether Plaintiffs failed to comply with their discovery obligations due to their willfulness, bad faith, or fault. NMDOT's first motion for sanctions was filed on February 25, 2009, against the twenty-seven Plaintiffs who had claims against NMDOT at the time. While NMDOT contended that all Plaintiffs' answers to interrogatories were deficient, it only attached the answers given by fifteen Plaintiffs. As part of their response to the motion, twenty Plaintiffs submitted an "offer of proof" on April 13, 2009, consisting of their statements under oath which addressed deficiencies claimed by NMDOT in their answers to interrogatories. Nine of the fifteen Plaintiffs in this appeal (Maria R. Bilboa, Luz Elena Bilboa, Esequiel C. Castro, Gregory Gabaldon, Veronica Gabaldon, Alfredo Granados, Ralph Kassian, Margie Mirabal, and Paulette Paltza) were among those submitting a sworn "offer of proof," and the sworn statements of three of them (Maria Bilboa, Luz Elena Bilboa, and Alfredo Granados) were in Spanish, apparently because they do not Speak English.

One year after it filed its first motion for discovery sanctions, NMDOT filed a second motion for discovery sanctions on February 9, 2010. This motion attached the discovery responses of additional Plaintiffs, which were not attached when it filed the original motion on February 25, 2009. In their response to the second motion, all eighteen Plaintiffs in this appeal attached their amended answers to NMDOT's first set of interrogatories and responses to requests for production, which had been served on NMDOT on February 18, 2010. In addition, Plaintiffs stated in their response that they were unable to provide a complete answer to Interrogatory No. 10 until their expert received information from NMDOT, and it was not provided until the first week of January 2010. The expert completed his report on February 11, 2010, and Plaintiffs served NMDOT with their amended answers to interrogatories and responses to requests for production on February 18, 2010.

Without conducting a hearing related to NMDOT's second motion for discovery sanctions, the district court filed the order on discovery sanctions on March 3, 2010. The order refers to the same fifteen Plaintiffs and the identical deficiencies asserted by NMDOT in its original motion filed on February 25, 2009, and fails to even mention what NMDOT claimed were deficient discovery responses of the remaining Plaintiffs attached to NMDOT's second motion filed on February 9, 2010.

34

Moreover, the order totally fails to consider the sworn offers of proof or the amended answers to interrogatories and responses to requests for production Plaintiffs filed in response to NMDOT's first and second motions. The district court nevertheless concluded that "Plaintiffs' responses to discovery are so deficient and so numerous in number that it cannot be called a mere oversight or an unsuccessful good faith attempt at answering discovery." I fail to see how the district court could arrive at such a conclusion or otherwise make a determination that Plaintiffs failed to comply with their discovery obligations due to willfulness, bad faith, or other fault sufficient to warrant the severe sanction of dismissal without considering Plaintiffs' sworn offers of proof or amended discovery responses.

In addition, I am impressed by the fact that the bulk of the order on discovery sanctions makes findings relating to deficient discovery responses to discovery propounded by BNSF—not NMDOT. In fact, the order on discovery sanctions filed on March 3, 2010, mirrors in many respects BNSF's motion to dismiss filed on December 9, 2008. Noticeably absent from the order is any analysis of how Plaintiffs' answers to discovery propounded by BNSF had any impact on the claims made by Plaintiffs against NMDOT, or whether NMDOT suffered any prejudice or expense as a result of Plaintiffs' responses to BNSF's discovery requests.

35

Further, the order on discovery sanctions fails to mention that Plaintiffs—including the eighteen Plaintiffs in this appeal—had already dismissed all their claims against BNSF and SRC in several stipulated orders. The three stipulated orders filed on June 23, 2009, between certain Plaintiffs and BNSF and SRC specifically state that because the Plaintiffs identified in those orders are dismissing their claims against BNSF and SRC, they do not seek sanctions against those Plaintiffs for willful abuses of discovery. In the fourth order, which was also filed on June 23, 2009, several additional Plaintiffs, BNSF, SRC, and NMDOT stipulated that all of those Plaintiffs' claims against both BNSF and NMDOT are dismissed with prejudice, "for failure to respond to discovery." All of these orders also specify that each party will bear its own costs and attorneys' fees.

Because the March 3, 2010 order on discovery sanctions fails to mention or acknowledge these stipulated orders, it fails to analyze whether, or to what extent, they affected the remaining issues raised by NMDOT's own motions for discovery sanctions filed on February 25, 2009, and a year later on February 9, 2010. For example, I note that the following Plaintiffs were specifically alleged to have provided deficient discovery responses to NMDOT in its first motion to dismiss filed on February 25, 2009, but they also subsequently dismissed all their claims against

36

BNSF: (1) Maria R. Bilboa, (2) Luz Elena Bilboa, (3) Alicia L. Castro, (4) Gregory Gabaldon, (5) Domingo Gomez, (6) Ralph Kassian, (7) Margie Mirabal, (8) Margie Mora, and (9) Gregorio Olvera. The order on discovery sanctions dismisses Plaintiffs' claims against NMDOT because of these Plaintiffs' responses to BNSF discovery requests without any analysis of why it is appropriate to do so. Equally perplexing, the order on discovery sanctions sets forth asserted deficient discovery responses of twenty-four individuals who were no longer in the case when the order was entered.[1] However, the district court order makes no analysis, determination, or finding that the purported discovery deficiencies of these twenty-four individuals rendered it proper or appropriate to dismiss the claims of the Plaintiffs before us with prejudice.

Finally, the March 3, 2010 order on discovery sanctions fails to mention, acknowledge, or analyze the effect of the fifth stipulated order filed on December 17, 2009. In this stipulated order, another group of Plaintiffs dismissed all their claims against NMDOT with prejudice, and NMDOT "waives all claims for sanctions against

---

[1]They are: (1) Alex Kloski; (2) Gilbert Martinez; (3) Lee Martinez; (4) Maria Martinez; (5) Shelley Hayner; (6) Marilyn Herrera; (7) Gary Bragg; (8) Reba Bragg, d/b/a Hatch Auto Electric, Inc.; (9) Karen E. Ingalls; (10) Lee Martinez; (11) George Moyers; (12) Rigoberto Perez; (13) Cynthia Shewmake; (14) Antoinette Turner; (15) Elias Silva; (16) Paula Silva; (17) Elizabeth Soto; (18) Angel Soto; (19) Edna Torres; (20) Manuel Torres; (21) Patsy Trujillo; (22) Enrique Trujillo; (23) Greg Mitchell, and (24) Barbara Mitchell, d/b/a United Drug Superstore).

these specific Plaintiffs[.]" Again, conspicuously absent from the order on discovery sanctions is any analysis of what effect, if any, the December 17, 2009 stipulated order had on the issues raised by NMDOT's motions of February 25, 2009, and February 9, 2010.

The foregoing reasons compel reversal of the district court order on discovery sanctions as it relates to the eighteen Plaintiffs before us in this appeal. In fact, the majority seems to agree at least in one respect. In reversing the award of attorney fees and costs, the majority states: "The district court listed the deficient and inadequate discovery responses of several Plaintiffs, including some who were no longer in the case, and some who were represented by other counsel, yet the order contemplates that the remaining Plaintiffs and Ms. Neumann bear the costs and fees for *all* of NMDOT's defense in this matter. We are unable to find support for the district court's ruling in this regard[.]"

I would reverse the order on discovery sanctions dismissing Plaintiffs' complaint against NMDOT with prejudice. Since the majority disagrees, I dissent.


_____
**MICHAEL E. VIGIL, Judge**

38